**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WIDMER ENTERPRISES, LLC, et al

        Plaintiffs,

v.                                          Case No. 18-cv-11138

                                           HON. MARK A. GOLDSMITH
FALCK USA, INC.,

        Defendant,
_____/

**OPINION & ORDER
GRANTING DEFENDANT FALCK USA, INC.'S MOTION TO DISMISS (Dkt. 11)**

This matter is before the Court on Defendant Falck USA, Inc.'s ("Falck") motion to dismiss (Dkt. 11), which is premised on the theory that the parties' dispute should be resolved through an arbitration mechanism established in their agreement. The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court grants Falck's motion.

**I. BACKGROUND**

Plaintiff Widmer Enterprises ("Widmer") owned Rapid Response, a limited liability company engaged in the emergency ambulance service business. Compl. ¶ 12 (Dkt. 1).[1] In July 2015, Falck entered an agreement to purchase the entirety of Rapid Response. Id. ¶ 13.

---

[1] Because this case is before the Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual background is drawn from the allegations made in Widmer's complaint.

1

Widmer and Falck agreed that the total purchase price would be in the range of $5,907,980 to $10,500,000, based on a formula described in the agreement. Id. ¶ 17. That formula provided that the price would be calculated based on a multiple of 4.83 times the "Normalized EBITDA"[2] (earnings before interest, taxes, depreciation and amortization) of Rapid Response for the twelve-month period ending on the second anniversary of the closing date (the "final period") less other specified amounts. Id. ¶ 18.

Under the agreement, Falck was tasked with preparing and delivering to Widmer a calculation of the amount of Normalized EBITDA for the final period, which had to be done within forty-five days following the completion of the final period. Purchase Agreement, Ex. 1 to Compl., § 2.3(d)(i)(A) (Dkt. 1-2). Widmer was then given forty-five days to review the calculation. Id. If there was a disagreement, Widmer was required to provide Falck with written notice of the dispute, including its own calculation of the payment due. Id. If Widmer accepted Falck's calculation, it

---

[2] The Normalized EBITDA is defined in the agreement as

> the consolidated earnings of the Company before interest, taxes, depreciation and amortization, adjusted for (i) all extraordinary or one-off income, expenses, gains or losses, (ii) any consequences in relation to any and all transactions that have not been entered into on arms-length terms and conditions (compared to the situation where all such transactions would have been entered into on arms-length terms), and (iii) similar normalizations. The parties hereto agree that with respect to calculating Normalized EBITDA and all other financial calculations hereunder the following shall apply: (a) calculations will be based on Generally Accepted Accounting Principles; (b) use of dispute resolution in Section 2.3 shall be used to resolve any disagreements on calculations; (c) calculations shall not include any management fees or overhead charges from Buyer/Falck that are not previously agreed to by Sellers; (d) <u>revenue/bad debt allowances shall be in line with industry standards and practices;</u> (e) in the event Buyer takes any actions that materially harms existing customer relationships, the calculations shall adjust Normalized EBITDA appropriately; and (f) expenses which are non-recurring in nature shall be considered in arriving at Normalized EBITDA as positives addbacks including business development expenses.

Purchase Agreement, Ex. 1 to Compl., at 61-62 (Dkt. 1-2) (emphasis added).

had to deliver an acceptance. Id. § 2.3(d)(i)(B). If neither disagreement nor acceptance was received, the original calculation would become final and binding. Id.

In the event of a dispute, the agreement required the parties to attempt in good faith to resolve the dispute within thirty days. Purchase Agreement, § 2.3(d)(i)(C). If no resolution could be reached, "then Buyer [Falck] or the Representative [Widmer] may promptly refer the dispute for resolution to the Accounting Expert." Id. The Accounting Expert would be responsible for rendering its opinion as soon as practicable and in any event within thirty calendar days after being instructed. Id. In making such determination, the Accounting Expert would act "as an expert and not as a mediator, render its opinion in accordance with the definitions and terms of this Agreement, and make a decision that would (in the absence of manifest error) be final and binding on the Parties." Id. The final payment was to be made within ten days after the final determination of the final value. Id. § 2.3(d)(ii).[3]

In October 2017, Falck released the funds in escrow, with Widmer receiving the maximum total purchase price payable under the agreement. Compl. ¶ 24. After the release of the funds,

---

[3] The relevant excerpt in full reads as follows:

> [If there is a dispute,] then Buyer and the Representative shall attempt in good faith to resolve such dispute by negotiation between the representatives who have authority to settle the dispute within 30 calendar days after delivery of the Final Period Dispute Notice. If Buyer and the Representative cannot reach agreement within such 30-calendar-day period (or such longer period as they mutually agree), then Buyer or the Representative may promptly refer the dispute for resolution to the Accounting Expert. The Accounting Expert shall be instructed to render its opinion as soon as practicable and in any event within 30 calendar days after being instructed. In making such determination, the Accounting Expert shall act as an expert and not as a mediator, shall render its opinion in accordance with the definitions and terms of this Agreement, and its decision shall (in the absence of manifest error) be final and binding on the Parties.

Purchase Agreement § 2.3(d)(i)(C).

Falck contacted Widmer claiming that it had made a mistake in the payment because Falck had understated bad debt reserves. Id. ¶ 25. According to Widmer, Falck increased the bad debt allowance in order to arrive at a final purchase price that was substantially lower than the price to which the parties had previously agreed and Falck had already paid. Id. ¶ 26. Falck prepared a final payment settlement, demanding that Widmer return $2,461,600 of the already-paid purchase price. Id. ¶ 27. Widmer refused. Id. ¶ 28. When Widmer refused, Falck sought to have the dispute resolved pursuant to § 2.3(d)(i)(C) of the agreement.

Widmer then filed the instant suit. It seeks a declaratory judgment against Falck that: (i) there is no requirement to arbitrate under the agreement; (ii) this Court is the proper forum in which to resolve this dispute; and (iii) Widmer is entitled to relief declaring that Falck is not entitled to any compensation for its mistake in computing the purchase price.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008)). Widmer claims that this Court should apply summary judgment standards to this case rather than motion to dismiss standards, citing Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). See Pl. Resp. at 7 (Dkt. 13). Widmer argues that Great Earth Companies holds that summary judgment standards apply when the validity of an arbitration agreement is at issue. Id. However, Widmer is not disputing the validity of the agreement, but rather whether the agreement constitutes an arbitration agreement at all. As explained below, this dispute falls under the arbitration agreement regardless of which standard is applied.

# III. ANALYSIS

Falck argues that the parties are required to arbitrate the instant dispute under the language in the purchase agreement:

> If Buyer and the Representative cannot reach agreement within such 30-calendar-day period (or such longer period as they mutually agree), then Buyer or the Representative may promptly refer the dispute for resolution to the Accounting Expert.

Purchase Agreement § 2.3(d)(i)(C). Widmer argues that there is no arbitration agreement based on the language in the contract, and that, at most, the use of the word "may" in the language of the clause at issue makes arbitration permissive, rather than mandatory. Falck responds that, under Sixth Circuit law, the clause functions as an arbitration clause, and that the use of the word "may" merely indicates that arbitration is only mandatory if triggered, which it was here.

The Federal Arbitration Act, 9 U.S.C. § 1, et seq., creates a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[4] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25. "The use of the term arbitrate is not a vital ingredient of an agreement to do so," Powderly v. MetraByte Corp., 866 F. Supp. 39, 42 (D. Mass. 1994) (citing Intern. Longshoremen's Ass'n, AFL-CIO v. Hellenic Lines, 549 F.Supp. 435, 437 (S.D.N.Y. 1982)), and "[n]o particular language is required to evidence an agreement to arbitrate," Perceptics Corp. v. Societe Electronique et Systems Trindel, 907 F.Supp. 1139, 1142 (E.D. Tenn. 1992). The Sixth Circuit has noted that "the following elements . . . amount[] to

---

[4] For this reason, Widmer's argument about Michigan substantive law and the requirements of the arbitration agreement is not persuasive.

'arbitration in everything but name': finality, 'an independent adjudicator, substantive standards (the contractual terms …), and an opportunity for each side to present its case.'" Shy v. Navistar Intern. Corp., 781 F.3d 820, 825 (6th Cir. 2015) (quoting Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir. 2004)).

The clause in question here appears to be the type of arbitration clause in everything but name contemplated by the Sixth Circuit in Shy. The clause in question calls for: (i) finality ("its decision shall (in the absence of manifest error) be final and binding on the Parties"); (ii) an independent adjudicator (PricewaterhouseCoopers LLP); and (iii) substantive standards ("shall render its opinion in accordance with the definitions and terms of this Agreement"). Purchase Agreement § 2.3(d)(i)(C). While the clause does not specifically call for an opportunity for each side to present its case, it does require that the Accounting Expert have access to relevant evidence if necessary to reach a resolution in the case. See id. ("In connection with the resolution of such dispute, the Account Expert shall have reasonable access . . . to all relevant portions of documents, records, work papers, facilities, and financial and account personnel of the Company to the extent necessary its functions as an expert"). The most important of these factors is the finality of the decision and independence of the adjudicator, see Evanston Ins. Co. v. Cosgwell Properties, LLC, 683 F.3d 684, 693 (6th Cir. 2012) (stressing that "[c]entral to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute") (internal quotation marks omitted), which are plainly present.

Further, contrary to Widmer's argument, the use of the word "may" does not indicate that the arbitration is only a permissive arbitration clause; rather, the clause is mandatory once triggered. It is clear from the language of the agreement – "Buyer or the Representative may promptly refer the dispute for resolution to the Accounting Expert" – that the Buyer and the

Representative have the option, singly or jointly, to refer the dispute to the Accounting Expert. The word "may" signifies that the referral is at the option of either or both, but not required unless invoked. See Detroit Edison Co. v. Burlington Northern and Santa Fe Railway Co., 442 F. Supp. 2d 387, 390-391 (E.D. Mich. 2006) ("The Court agrees that the use of the word 'may' in the Agreement's arbitration provision gives the parties the option of arbitrating or doing nothing. Therefore, the Court believes that the arbitration provision is mandatory, provided sections 2 and 3 of the FAA are satisfied."). If such a referral is made, the mandatory nature of the arbitration clause takes effect.

Having determined that the clause is mandatory if triggered, the Court must next address whether the clause properly applies to this dispute. "When an arbitration clause is not broadly worded, and does not cover all disputes arising out of the agreement, only those claims that fall within the scope of the clause can be subject to mandatory arbitration." Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc., 383 F. App'x 517, 520 (6th Cir. 2010) (emphasis in original). The clause here only provides for arbitration in case of a dispute on the final value, making it a narrow arbitration clause. Thus, the case may be dismissed only if the dispute here falls within the terms of the arbitration clause. As explained above, the dispute here revolves around Falck's demand of $2,461,600 of the already-paid purchase price due to Falck's understating bad debt reserves, which resulted in a change in the calculation of the Normalized EBITDA. Because the agreement explicitly allowed for the resolution of such a dispute by way of the Accounting Expert provision, the matter is subject to that provision.

Further, because the result reached by the Accounting Expert might make it unnecessary for the Court to resolve the remaining legal issues in the case, the Court will dismiss the case without prejudice. See Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 812

(dismissing a case as not fit for review because "further factual development would significantly advance our ability to deal with the legal issues presented") (internal quotation marks omitted); <u>Hemlock Semiconductor Corp. v. Kyocera Corp.</u>, 747 F. App'x 285, 292 (6th Cir. 2018) (dismissing a case seeking declaratory judgment because the "chain of contingencies" necessary to trigger the dispute showed "that the controversy [] is hardly immedia[te]") (second alteration in original) (internal quotation marks omitted).

## IV. CONCLUSION

For these reasons, the Court grants Falck's motion to dismiss (Dkt. 11). This case is dismissed without prejudice.

SO ORDERED.

Dated: March 6, 2019  　　　　　　　　　　　　s/Mark A. Goldsmith  
　Detroit, Michigan　　　　　　　　　　　　　　MARK A. GOLDSMITH  
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 6, 2019.

　　　　　　　　　　　　　　　　　　　　　　　s/Kristen MacKay for Karri Sandusky  
　　　　　　　　　　　　　　　　　　　　　　　Case Manager